## A. H. WHITE CO., Limited, v. BURGLASS.

### No. 16894.

Court of Appeal of Louisiana. Orleans.

Oct. 31, 1938.

Edward Rightor, of New Orleans, for appellant.

Spencer, Phelps, Dunbar & Marks and St. Clair Adams & Son, all of New Orleans, for appellees.

JANVIER, Judge.

The A. H. White Company, Ltd., is engaged in the business of constructing and repairing roofs. Abraham Burglass is a furniture dealer in New Orleans owning several adjoining and connected buildings in which he conducts his business. On May 19, 1936, plaintiff company contracted in writing to make certain repairs to the roofs of the Burglass buildings for the contract price of $1,375. Later it found it necessary to do certain extra work for which it charged $49.70. On July 24, 1936, before the work was completed, there was a heavy rainfall and a considerable amount of water entered some of the buildings, damaging certain furniture of the defendant. On completion of the work plaintiff company demanded payment of the amount agreed upon, together with the amount charged for the extra work, but Burglass declared that the damage sustained by his furniture was chargeable to plaintiff company and he asserted his right to withhold from the amount due a sum sufficient to reimburse him for the said damage. An agreement was reached by which he paid to plaintiff company $700 on account of the amount due, with the understanding that the question of the extent of the damage and the responsibility therefor would be left for future determination. The parties have been unable to adjust the controversy and this suit has resulted.

Plaintiff company claims the balance of $724.70 for the work done. and $3 as the cost of recording in the office of the Recorder of Mortgages an affidavit showing the balance claimed to be due.

Burglass filed answer admitting that the contract had been entered into and, with certain qualifications, that the work required thereby had been executed. But he denied any indebtedness for extra work and, by reconventional demand, claimed from the White Company $1,202.90 as the amount of damage sustained by his furniture and as the cost of removing the water and of moving some of the said furniture.

In the District Court there was judgment for plaintiff company for the full amount claimed and the reconventional demand was dismissed, all at the cost of defendant.

That the judgment was correct insofar as it recognizes plaintiff's right to the balance stipulated for in the contract and for the amount claimed for extra work, there can be no doubt. It is shown that the contract was completely executed and that the work was accepted and that the extra work was agreed upon. In fact, no serious issue is made over the main demand.

The sole question, therefore, is whether the damage which was sustained by defendant was legally chargeable to the White Company, and, if so, what was the amount of that damage.

The record clearly establishes the fact that, when Mr. Burglass found that repairs were required by his various roofs, he consulted a Mr. Louis Hoffmann, who seems to be a roofing expert, and he had Mr. Hoffmann examine his roofs and prepare itemized specifications for the making of the necessary repairs. Mr. Burglass, after submitting these specifications to several roofing contractors, including the plaintiff company, awarded the contract to the plaintiff company.

It is the contention of Burglass that the White Company is responsible for the damage because the officials and employees of the latter, in repairing the roofs, were negligent in leaving portions thereof not sufficiently protected against inclement

weather, and it is his alternative contention that, even if there was no such negligence, nevertheless the roofing company is liable because of a stipulation in the contract which, Burglass maintains, should be construed as placing upon the said company full responsibility for any damage sustained during the execution of the contract regardless of fault on its part. In other words, in this contention Burglass takes the position that, under the terms of the contract the White Company guaranteed him that while the work was in progress no water would enter the premises either by the fault of that company or because of previously existing defects not involved in the contract for repairs. The stipulation on which this argument is based reads as follows: "* * * the contractor must hold himself liable for any damage to the contents of the building."

In considering this question, it is well to bear in mind that the White Company did not contract for the entire renewal of the roofs, but agreed to do only such work as was set forth in the specifications which were prepared, not by the White Company, but by Mr. Hoffmann, the expert of Mr. Burglass. These specifications did not require the replacing or removing of certain down-spouts, or "sumps" and, in fact, required no work at all on certain parts of the roof. It is not reasonable, then, to assume that the White Company intended to assume responsibility for any damage resulting from water which might enter the building through defects existing in portions of the roof not contemplated by the contract.

Mr. Carl E. Woodward, a building contractor of many years' experience, testified that similar stipulations are often found in roofing contracts and that they are always interpreted among contractors as placing upon the contractor liability for damage resulting from water only where the contractor failed to protect that part of the work in which he was engaged and as not making him an insurer against all damage, whatever the cause.

We feel that this is the proper interpretation of the clause in question and that, consequently, the White Company cannot be held responsible for the damage sustained here unless the damage was caused by improper work, or by failure to protect portions of the exposed roof against rainfall. We therefore turn to the evidence to consider this question.

In the District Court it was found that Burglass had not shown, with any degree of certainty, that any of the damage had resulted from the fault of the White Company and it was held that, since Burglass, as plaintiff in reconvention, was required to bear the burden of showing this, there should be judgment dismissing the reconventional demand.

The evidence is quite confusing. There were ten separate roofs and on nearly every one of them was a different kind of roofing material. In the two buildings in which the water damage occurred there were false ceilings, which made it very difficult indeed to determine whether the water which damaged the furniture entered through leaks immediately overhead, or ran along the upper side of the ceilings and dropped through it at convenient places far removed from the roof leaks through which it had gained original access.

It is the contention of the White Company that the water entered the two buildings through defective "sumps", two of which were located in the roofs of each of the said buildings, whereas Burglass maintains that it entered because too much of the roofing material was removed and too much roof was left unprotected on the day of the extremely heavy rainfall. There is evidence to the effect that the laborers removed gravel, felt and tar and that it was at such places that the water entered. On the other hand, the White Company offered evidence to show that at no time was any portion of the roof left unprotected and that the contract did not require the removal of the felt and the tar, which, it is said, is the material which offers protection against rain.

There can be no doubt that the "sumps" in question were defective and that the contract did not require repairs to these particular "sumps". A "sump" is a metal opening somewhat of the shape of a funnel, through which water which falls upon a roof enters a down-spout to be carried to the drains below. The upper edge of a "sump" or funnel is made flush with the roof and the smaller end is inserted into the upper part of the down-spout. It is proper practice to seal with solder the lower end of the "sump" to the upper end of the down-spout, so that, if the down-spout is clogged in any way, the water will not "back up" and enter the building by means of this un-

sealed joint. That this was not done is testified to and is evidenced by one "sump" which was offered in evidence. The downspouts in question were not outside the buildings, but were under the roofs and above the false ceilings and some of the witnesses testify that they became clogged or choked with débris and, because of the intensity of the rain, water backed up in these down-spouts, entered the building through the unsealed joints, and then meandered over the false ceilings and dropped upon the furniture below. It is shown that the dirt and débris which clogged these spouts was old and had apparently been in them for a long time. It thus appears that the presence of it was not chargeable to fault of the White Company. It is possible that water also entered elsewhere, but we agree with the district judge that this has not been shown with any certainty.

Counsel for Burglass argues that the White Company is responsible because Mr. White of that company was sent for as a specialist and was asked to advise what repairs should be made to the roof and that, therefore, his failure to require repairs to these "sumps" was the proximate cause of the damage. It is said that a roofing specialist is in the position of a doctor who is summoned to make a diagnosis and to advise what should be done. Conceding that this is true where the roofing specialist is called in and the owner asks him for advice as to what repairs should be made, that principle does not apply where the owner decides for himself what repairs are necessary and then submits his own specifications to the roofing contractor.

It is shown that the White Company, while making the repairs contracted for, discovered the other defects and advised that they be repaired. This did not make that company liable for the results of any undiscovered defects.

Viewing the record as a whole, we repeat that we find it impossible to say definitely and with certainty that the water entered through the defective "sumps", but we do find that that seems to be the most probable port of entry, and, since the burden was on the plaintiff in reconvention to sustain its demand by showing that the damage resulted from the negligence of the White Company, we conclude that the judgment below dis-

missing the reconventional demand was correct.

It is therefore ordered, adjudged and decreed that the judgment appealed from be and it is affirmed at the cost of appellant.

Affirmed.

WESTERFIELD, J., takes no part.